**ELECTRIC MOBILITY CORPORATION,**
Plaintiff,

v.

**BOURNS SENSORS/CONTROLS, INC.**
**and Hall–Mark Electronics, Inc.,**
Defendants.

Civil Action No. 90–2844.

United States District Court,
D. New Jersey.

March 13, 2000.

Frank A. Luchak, Kenneth M. Denti, Suzanne Hasson dePillis, Duane, Morris & Heckscher, LLP, Cherry Hill, NJ, for Plaintiff, Electric Mobility Corp.

Stuart Mark Feinblatt, Kathleen Burns Gengaro, Sills Cummis Zuckerman Radin Tischman Epstein & Gross, P.A., Newark, NJ, Thomas G. Carruthers, O'Melveney & Myers, LLP, New York City, for Defendants, Bourns Sensors/Controls, Inc. and Hall–Mark Electronics, Inc.

## OPINION

ORLOFSKY, District Judge.

In this contract case, involving the manufacture and sale of faulty machine parts, this Court is called upon to explore the doctrine of judicial admissions, as well as to examine the interplay between the certification of interlocutory orders, pursuant to 28 U.S.C. § 1292(b), and reconsideration of non-final orders, under Federal Rule of Civil Procedure 54(b). I also consider, but do not decide, on this sparse record, whether a plaintiff is entitled to recover prejudgment interest under New Jersey law while a case has been administratively stayed to allow the parties to pursue alternative dispute resolution.

Currently before this Court are three motions in this protracted and hotly contested litigation between Plaintiff, Electric Mobility Corporation ("Electric Mobility"), a manufacturer of electronic scooters and wheelchairs, and Defendants, Bourns Sensors/Controls, Inc. and Hall–Mark Electronics, Inc. ("Defendants"), the manufacturer and distributor of potentiometers, components of Electric Mobility's machines. Specifically, Electric Mobility has moved, pursuant to 28 U.S.C. § 1292(b), for certification of Judge Bassler's Order of January 8, 1992, which, among other things, granted summary judgment on Electric Mobility's claim under the New Jersey Consumer Fraud Act, and my Order of October 30, 1998, which denied Electric Mobility's motion for leave to amend its First Amended Complaint to add an additional plaintiff. *See* Notice of Plaintiff's Motion for Certification of the Court's Order of January 8, 1992 and October 30, 1998 (filed July 1, 1999). Defendants also have moved for partial summary judgment, pursuant to Federal Rule of Civil Procedure 56(c), on portions of Electric Mobility's claims for prejudgment interest and out-of-pocket expenses. *See* Notices of Motion (filed July 30, 1999). For the reasons set forth below, I shall deny Electric Mobility's motion for certification and order the parties to brief: (1) whether this Court should reconsider, pursuant to Federal Rule of Civil Procedure 54(b), the New Jersey Consumer Fraud Act issue decided by the January 8, 1992 Order entered by my colleague, Judge Bassler; and (2) if so, whether this Court should vacate Judge Bassler's Order granting partial summary judgment. Furthermore, I shall deny the Defendants' motion for partial summary judgment on Electric Mobility's prejudgment interest claim without prejudice and grant in part and deny in part its partial summary judgment motion on Electric Mobility's out-of-pocket expense claim.

## I. PROCEDURAL HISTORY

The facts of this nine-year-old saga have been articulated in each of the various Opinions and Orders filed in this case. Consequently, the following recitation

merely sets forth the factual and procedural history relevant to the three motions described above.

Electric Mobility purchased Bourns potentiometers for its motorized wheelchairs and scooters through Hall–Mark Electronics, Inc. *See* Br. in Supp. of Pl.'s Mot. for Certif. ("Pl.'s Certif. Br.") at 1. Subsequently, both Bourns and Electric Mobility discovered problems with the potentiometers. *See id.* Unable to resolve its differences with Bourns and the distributor, Hall–Mark Electronics, Inc., Electric Mobility sought legal redress in this Court. *See* Complaint (filed July 20, 1990).

In its First Amended Complaint, filed September 17, 1990, Electric Mobility alleged that, in supplying sub-standard potentiometers, the Defendants: (1) breached express and implied warranties of merchantability and fitness for a particular purpose (Count I); (2) violated the New Jersey Consumer Fraud Act, N.J.S.A. 56:8–2 (Count II); and (3) supplied and manufactured latently defective potentiometers (Count III). *See* First Amended Complaint at 2–7 (filed September 17, 1990). On January 8, 1992, my colleague, the Hon. William G. Bassler, to whom this case was then assigned, filed an unpublished Opinion and Order granting, among other things, the Defendants' motion for summary judgment on Count II of the First Amended Complaint, finding the New Jersey Consumer Fraud Act inapplicable to the facts of this case. *See Electric Mobility Corp. v. Bourns Sensors/Controls, Inc., et al.,* No. 90–2844 at 24 (D.N.J. filed Jan. 9, 1992).

Subsequently, on April 13, 1992, Judge Bassler administratively terminated the case, based upon the desire of both parties to stay the litigation and "to engage in a private alternative dispute resolution process. . . ." *See* Order for Administrative Termination at 1 (filed April 13, 1992); *see also* Aff. of Thomas G. Carruthers on Electric Mobility's Prejudgment Interest Claim ("Carruthers Prejudgment Interest Aff."), Ex. A. More than five years later, on April 29, 1997, Electric Mobility moved to vacate

Judge Bassler's Order and to reopen the case for further proceedings. *See* Notice of Motion (filed April 29, 1997); *see also* Carruthers Prejudgment Interest Aff., Ex. B. I granted Electric Mobility's motion on June 6, 1997. *See* Order Reopening Case for Further Proceedings at 4 (filed June 6, 1997); *see also* Carruthers Prejudgment Interest Aff., Ex. C, at 1–4.

On September 21, 1998, Electric Mobility moved for leave to file a Second Amended Complaint in order to add Dignified Products Corporation ("DPC") as a plaintiff in this case. On October 30, 1998, I heard oral argument and in a bench opinion denied Electric Mobility's motion as futile because it did not relate back to the filing of Electric Mobility's First Amended Complaint. *See* Tr. of Oct. 30, 1998 Proceedings (filed Nov. 18, 1998); Order (filed Oct. 30, 1998). Subsequently, I denied a motion for reargument of my Order denying Electric Mobility's motion for leave to file a Second Amended Complaint. *See Electric Mobility Corp. v. Bourns Sensors/Controls, Inc., et al.,* No. 90–2844 at 2–7 (filed Nov. 20, 1998).

More than eight months later, Electric Mobility moved before this Court for certification to the United States Court of Appeals for the Third Circuit of this Court's Order of October 20, 1998, denying Electric Mobility's motion for leave to file a Second Amended Complaint, and Judge Bassler's January 8, 1992 Order granting the Defendants' summary judgment motion on Electric Mobility's New Jersey Consumer Fraud Act claim set forth in the First Amended Complaint. *See* Notice of Motion (filed July 1, 1999).

Later that month, on July 30, 1999, the Defendants filed two motions for partial summary judgment, arguing that, as a matter of law, they are neither liable for the portion of Electric Mobility's requested prejudgment interest covering the five-year period from April 13, 1992 to June 6, 1997, when this case was administratively stayed, nor for Electric Mobility's out-of-pocket expenses incurred before January

20, 1989 and after May 1, 1990. *See* Notices of Motion (filed July 30, 1999).

## II. ELECTRIC MOBILITY'S MOTION FOR CERTIFICATION

The granting of certification or orders for interlocutory appeal is governed by 28 U.S.C. § 1292(b) which provides:

> When a district judge, in making in a civil action an order not otherwise appealable under this section, shall be of the opinion that such order involves a controlling question of law as to which there is substantial ground for difference of opinion and that an immediate appeal from the order may materially advance the ultimate termination of the litigation, he shall so state in writing in such order. The Court of Appeals which would have jurisdiction of an appeal of such action may thereupon, in its discretion, permit an appeal to be taken from such order, if application is made to it within ten days after the entry of the order: *Provided, however,* That application for an appeal hereunder shall not stay proceedings in the district court unless the district judge or the Court of Appeals or a judge thereof shall so order.

28 U.S.C. § 1292(b)(1993)(emphasis in original).

■ Accordingly, the Court may certify an order for interlocutory appeal where the District Court finds that: (1) the order involves a controlling question of law; (2) there is substantial ground for difference of opinion as to that controlling question of law; and (3) an immediate appeal from the order may materially advance the ultimate termination of the litigation. *See id.; see also Katz v. Carte Blanche Corp.,* 496 F.2d 747, 754 (3d Cir.1974). The granting or denial of certification of an order for interlocutory appeal lies largely in the discretion of the District Judge. *See Ferraro v. Secretary of the United States Dep't of Health and Human Serv.,* 780 F.Supp. 978, 979 (S.D.N.Y.1992); *see also* 16 Charles Alan Wright, Arthur R. Miller, Edward H. Cooper, Federal Practice and Procedure, § 3929, at 371 (1996) n. 27 (citing S. Rep. 2434, 85th Cong., 2d Sess., 1958, in 1958 U.S.C.C.A.N. 5255, 5257 ("[T]he appeal is discretionary rather than a matter of right. It is discretionary in the first instance with the district judge.")). It is well-settled that certification is inappropriate where the movant merely disagrees with an adverse ruling of the District Court. *See Kapossy v. McGraw–Hill, Inc.,* 942 F.Supp. 996, 1001 (D.N.J.1996)(Orlofsky, J.)(citing *Max Daetwyler Corp. v. Meyer,* 575 F.Supp. 280, 282 (E.D.Pa.1983); *United States v. Grand Trunk Western R.R.,* 95 F.R.D. 463, 471 (W.D.Mich.1981)).

■ In support of its motion for certification, Electric Mobility argues that Judge Bassler's Order of January 8, 1992 and my Order of October 30, 1998 meet the three statutory criteria set forth in 28 U.S.C. § 1292(b). *See* Pl.'s Certif. Br. at 1–14. The Defendants disagree, arguing that in each instance, there is no difference of opinion on the controlling questions of law and immediate appeal will not materially advance the ultimate termination of the litigation. *See* Mem. of Law of Defs. In Opp. to Pl.'s Mot. for Certif. ("Defs.' Certif. Mem.") at 3–11. For the reasons set forth below, I shall deny the motion for certification with respect to both Orders.

On October 30, 1998, in a bench opinion, following oral argument on the merits of Electric Mobility's motion for leave to file a second amended complaint, I relied upon *Nelson v. County of Allegheny,* 60 F.3d 1010 (3d Cir.1995), to find that the lost profits claim of DPC, the proposed additional plaintiff, did not relate back to the First Amended Complaint and, therefore, was barred by the applicable statute of limitations. *See* Tr. at 41–43 (Oct. 30, 1998). Moreover, based upon the clear language of *Nelson,* I rejected Electric Mobility's argument that DPC was the real party in interest under Federal Rule of Civil Procedure 17(a). *See id.* at 43–44. Accordingly, I denied Electric Mobility's motion for leave to file an amended complaint to add DPC as a plaintiff because

the amendment would have been futile. *See id.* at 39, 44.

In its motion for certification of the question of whether DPC's lost profits claim relates back to the First Amended Complaint, Electric Mobility contends that a substantial difference of opinion exists within this Circuit as to the controlling rule of law on the "relation back" doctrine. *See* Pl.'s Certif. Br. at 7. Specifically, Electric Mobility argues that *Fashion Novelty Corp. of New Jersey v. Cocker Machine and Foundry Co.*, 331 F.Supp. 960 (D.N.J. 1971), and not the test articulated by the Third Circuit in *Nelson v. County of Allegheny*, 60 F.3d 1010 (3d Cir.1995), is controlling because Electric Mobility merely seeks to substitute a real party in interest under Federal Rule of Civil Procedure 17(a). *See id.* Although it is clear that my October 30, 1998 Order involves a controlling question of law, *see Katz*, 496 F.2d at 755 (stating that a controlling question of law is one that "if erroneous, would be reversible error on final appeal"), Electric Mobility has not demonstrated that there is substantial ground for a difference of opinion.

In the hearing on the motion for leave to amend, I acknowledged and rejected Electric Mobility's argument that it merely sought to substitute a real party in interest and could do so despite the running of the statute of limitations. *See* Tr. at 43–44. In its reliance upon *Fashion Novelty Corp.*, 331 F.Supp. at 960, a twenty-eight-year-old case that held that an amended complaint "related back" when there was virtual identity between the original and new plaintiffs and an absence of prejudice to the defendant, I conclude that Electric Mobility simply disagrees with my earlier ruling. There is no substantial difference of opinion about the applicable test in this instance; unlike the District Court in *Fashion Novelty Corp.*, 331 F.Supp. at 960, the Third Circuit expressly addressed, albeit in a footnote, the interplay between the relation back doctrine set forth in Federal Rule of Civil Procedure 15(c) and the real party in interest doctrine of Federal Rule of Civil Procedure 17(a). *See Nelson*, 60 F.3d at 1015 n. 8. In light of the thorough analysis set forth in *Nelson,* I find the cursory analysis of the District Court's opinion in *Fashion Novelty Corp.* unpersuasive. Accordingly, I shall deny with prejudice Electric Mobility's motion for certification of this Court's October 30, 1998 Order.

In an unpublished Opinion and Order dated January 8, 1992, Judge Bassler granted the Defendants' motion for partial summary judgment on, among other things, Electric Mobility's claim under the New Jersey Consumer Fraud Act, N.J.S.A. 56:8–2 ("the Act"). *See Electric Mobility Corp. v. Bourns Sensors/Controls, Inc., et al.,* No. 90–2844, at 21–24 (D.N.J. filed Jan. 9, 1992). In so doing, Judge Bassler reasoned that the Act did not apply to experienced commercial entities of relatively equal bargaining power that engage in carefully negotiated contracts. *See id.*

At the time of Judge Bassler's Opinion and Order, the question of whether New Jersey courts would recognize a claim under the Act brought by one commercial entity against another had been labeled a "morass." *See Vanguard Telecommunications, Inc. v. Southern New England Telephone Co.,* 900 F.2d 645 (3d Cir.1990). In finding the Act "inapplicable to the situation here," Judge Bassler relied on *Werner & Pfleiderer Corp. v. Gary Chemical Corp.,* 697 F.Supp. 808, 814–15 (D.N.J.1988)(Wolin, J.), *Unifoil Corp. v. Cheque Printers and Encoders, Ltd.,* 622 F.Supp. 268, 270 (D.N.J.1985)(Stern, J.), and *BOC Group, Inc. v. Lummus Crest, Inc.,* 251 N.J.Super. 271, 597 A.2d 1109 (Law Div.1990). Subsequent New Jersey case law, however, has effectively eroded the reasoning of these cases. *See e.g., Coastal Group, Inc. v. Dryvit Systems, Inc.,* 274 N.J.Super. 171, 179–180, 643 A.2d 649 (App.Div.1994)(finding the Act applicable to commercial entities and stating that "both *Unifoil* and *Werner & Pfleiderer* were based on an overly expansive reading of *Spring Motors[ Distributors Inc. v.*

*Ford Motor Co.,* 98 N.J. 555, 489 A.2d 660 (1983) ], which is inconsistent with [state statutory provisions] as well as with state decisional law"); *see also Naporano Iron & Metal Co. v. American Crane Corp.,* 79 F.Supp.2d 494 (D.N.J.1999)(Greenaway, J.)(corporate purchaser of crane stated claim against manufacturer under the Consumer Fraud Act); *Florian Greenhouse, Inc. v. Cardinal IG Corp.,* 11 F.Supp.2d 521 (D.N.J.1998)(Walls, J.)(recognizing the availability of a cause of action by manufacturer against supplier under Consumer Fraud Act); *Alloway v. General Marine Indus.,* 149 N.J. 620, 640, 695 A.2d 264 (1997)(citing *Coastal Group* favorably in dicta for the proposition that a commercial party could bring a Consumer Fraud Act claim). In short, courts have held that "it is the character of the transaction rather than the identity of the purchaser which determines if the Consumer Fraud Act is applicable." *See J & R Ice Cream Corp. v. California Smoothie Licensing Corp.,* 31 F.3d 1259, 1273–74 (3d Cir.1994)(citing *Daaleman v. Elizabethtown Gas Co.,* 77 N.J. 267, 390 A.2d 566 (1978)(concurring opinion)); *see also Naporano Iron & Metal Co. v. American Crane Corp.,* 79 F.Supp.2d 494, 508 (D.N.J.1999)(Greenaway, J.); *Lithuanian Commerce Corp. v. Sara Lee Hosiery,* 179 F.R.D. 450, 469 (D.N.J.1998)(Orlofsky, J.); *accord Marascio v. Campanella,* 298 N.J.Super. 491, 498, 689 A.2d 852 (App.Div.1997)("Those who purchase these services, whether commercial entities or individual citizens, are 'consumers' in the ordinary as well as statutory meaning of that word").

In support of its motion for certification, Electric Mobility contends that *Coastal Group* and the decisions in *Perth Amboy Iron Works, Inc. v. American Home Assurance Co.,* 226 N.J.Super. 200, 543 A.2d 1020 (App.Div.1988) and *Hundred East Credit Corp. v. Eric Schuster Corp.,* 212 N.J.Super. 350, 515 A.2d 246 (App.Div. 1986), two state court decisions distinguished by Judge Bassler, are evidence that there is a "substantial ground for difference of opinion" on the issue of whether the Act covers a claim brought by one commercial entity against another. *See* Pl.'s Certif. Br. at 4–6. In opposition to the motion for certification, the Defendants argue that Judge Bassler's 1992 Order is limited to the facts of the case but fail to address the subsequent case law on the issue. *See* Defs.' Certif. Mem. at 5–8.

■ This Court has been unable to discover any judicial authority supporting Electric Mobility's implicit contention that cases decided after the decision at issue may be considered in determining the existence of a "difference of opinion" under 28 U.S.C. § 1292(b). I need not address that issue, however, since I conclude that certification is the inappropriate mechanism for the relief sought by Electric Mobility. For the reasons set forth below, I conclude that certification is improper where other mechanisms for District Court review of an earlier decision are available. For that reason, I shall dismiss Electric Mobility's motion for certification of Judge Bassler's January 8, 1992 Order without prejudice. Instead, I shall consider the applicability of Federal Rule of Civil Procedure 54(b) to these circumstances.

Federal Rule of Civil Procedure 54(b) provides that:

When more than one claim for relief is presented in an action, whether as a claim, counterclaim, cross-claim, or third-party claim, or when multiple parties are involved, the court may direct the entry of final judgment as to one or more but fewer than all of the claims or parties only upon an express determination that there is no just reason for delay and upon an express direction for the entry of judgment. In the absence of such determination and direction, any order or other form of decision, however designated, which adjudicates fewer than all the claims or the rights and liabilities of fewer than all the parties shall not terminate the action as to any of the claims or parties, and *the order or other form of decision is subject to revision at any time before the entry of judgment adjudicating all the claims*

*and the rights and liabilities of all the parties.*

Fed.R.Civ.P. 54(b)(emphasis added); *see also Waste Conversion, Inc. v. Sims*, 868 F.Supp. 643, 649 (D.N.J.1994)(Irenas, J.)(finding jurisdiction, pursuant to Rule 54(b), to reconsider a non-final judgment).

In this case, the partial summary judgment issued by Judge Bassler is an interlocutory order subject to Rule 54(b). *See Gallant v. Telebrands Corp.*, 35 F.Supp.2d 378, 394 (D.N.J.1998)(Lechner, J.). Consequently, Judge Bassler's 1992 Order is subject to revision at any time before the entry of final judgment on all of the claims in this case. *See* Fed.R.Civ.P. 54(b). Reconsideration may be justified on the basis of an intervening change in law, *see Grozdanich v. Leisure Hills Health Center*, 48 F.Supp.2d 885, 888 (D.Minn.1999); *Richman v. W.L. Gore & Assoc., Inc.*, 988 F.Supp. 753, 755 (S.D.N.Y.1997); *Washington v. Garcia*, 977 F.Supp. 1067, 1069 (S.D.Cal.1997); *McCoy v. Macon Water Auth.*, 966 F.Supp. 1209, 1222 (M.D.Ga. 1997), and is not necessarily barred in this District by Local Civil Rule 7.1(g), requiring motions for reconsideration to be filed within ten days of an order, *see* L. Civ. R. 1.1(a),[1] 83.2(b).[2]

Accordingly, this Court shall order the parties to brief, within twenty days of receipt of this Opinion, the question of whether this Court should reconsider the Consumer Fraud Act issue in Judge Bassler's January 8, 1992 Order as well as the propriety of vacating the order of partial summary judgment. The Court will list this issue for disposition on its motion calendar on May 5, 2000. Unless counsel are advised to appear for oral argument by the Court, the issue shall be decided on the papers.

## III. THE DEFENDANTS' MOTIONS FOR PARTIAL SUMMARY JUDGMENT

### A. Legal Standard Governing Summary Judgment

"On a motion for summary judgment, the court must determine whether the evidence shows that 'there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.'" *Abraham v. Raso*, 183 F.3d 279, 287 (3d Cir.1999) (citing Fed.R.Civ.P. 56(c)). "Any factual dispute invoked by the nonmoving party to resist summary judgment must be both material in the sense of bearing on an essential element of the plaintiff's claim and genuine in the sense that a reasonable jury could find in favor of the nonmoving party." *Id.* (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248–51, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986)). "In opposing summary judgment, a party 'must do more than simply show that there is some metaphysical doubt as to material facts,' *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986), but a court should not prevent a case from reaching a jury simply because the court favors one of several reasonable views of the evidence." *Abraham*, 183 F.3d at 287. "[T]he judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson*, 477 U.S. at 249, 106 S.Ct. 2505; *see also Abraham*, 183 F.3d at 287. "Thus, while the nonmoving party must present enough evidence to demonstrate a dispute is genuine, all inferences in interpreting the evidence presented by the parties should be drawn in favor of the nonmoving party." *Abraham*, 183 F.3d at 287 (citing *Boyle v. County of Allegheny Pa.*, 139 F.3d 386, 393 (3d Cir.1998)). "Cases that turn crucially on the credibility of

---

**1.** Local Civil Rule 1.1 provides, in relevant part, that "[t]he following Rules supplement the Federal Rules of Civil Procedure ... and are applicable in all proceedings when not inconsistent therewith." L. Civ. R. 1.1(a).

**2.** Local Civil Rule 83.2(b) provides that "[u]nless otherwise stated, any Rule may be relaxed or dispensed with by the Court if adherence would result in surprise; or injustice." L. Civ. R. 83.2(b).

witnesses' testimony in particular should not be resolved on summary judgment." *Id.*

If the nonmoving party fails to oppose the motion by written objection, memorandum, affidavits and other evidence, the Court "will accept as true all material facts set forth by the moving party with appropriate record support." *Anchorage Assocs. v. Virgin Islands Bd. of Tax Rev.*, 922 F.2d 168, 175 (3d Cir.1990) (quoting *Jaroma v. Massey*, 873 F.2d 17, 21 (1st Cir.1989)). Even where the non-moving party has failed to establish a triable issue of fact, summary judgment will not be granted unless "appropriate." Fed. R.Civ.P. 56(e); *see Anchorage Assocs.*, 922 F.2d at 175. Rule 56(e) of the Federal Rules of Civil Procedure requires that the case be evaluated on its merits, with summary judgment being granted for the movants only if they are entitled to a judgment as a matter of law. *See Anchorage Assocs.*, 922 F.2d at 175.

### B. The Defendants' Partial Summary Judgment Motion on Electric Mobility's Claim for Prejudgment Interest

Electric Mobility submits that, if successful, it is entitled to $209,811 in prejudgment interest. *See* Carruthers Prejudgment Interest Aff., Ex. D ("Electric Mobility Corporation v. Bourns Sensors/Controls, Inc. Report on Damages") at 2, Ex. 1. In calculating this sum, Electric Mobility included the interest accrued between April 13, 1992 and June 6, 1997, the five-year period in which this case was administratively stayed. *See id; see also* Pl.'s Statement of Uncontested Facts at ¶ 7. The Defendants move, pursuant to Federal Rule of Civil Procedure 56(c), for partial summary judgment, arguing that Electric Mobility is not entitled to recover prejudgment interest for the period of administrative termination. *See* Mem. of

Law of Bourns Sensors/Controls and Hall–Mark Electronics in Supp. of their Mot. for Partial Summ. J. With Respect to EMC's Claim for Prejudgment Interest ("Defs.' Prejudgment Interest Mem.") at 4. In opposition to the motion, Electric Mobility argues that the Defendants' motion is premature and, in the alternative, that there is no basis for summary judgment under New Jersey law. *See* Pl.'s Mem. of Law in Supp. of Its Resp. to Defs.' Mot. for Partial Summ. J. With Respect to EMC's Claim for Prejudgment Interest ("Pl.'s Prejudgment Interest Mem.") at 4–7.

 Under New Jersey law, prejudgment interest may be awarded on contract claims in the discretion of the court and in accordance with equitable principles. *Meshinsky v. Nichols Yacht Sales, Inc.*, 110 N.J. 464, 478, 541 A.2d 1063 (1988); *Sulcov v. 2100 Linwood Owners, Inc.*, 303 N.J.Super. 13, 38, 696 A.2d 31 (App.Div.), *certif. granted*, 152 N.J. 10, 702 A.2d 349 (1997); *Derfuss v. New Jersey Mfrs. Ins. Co.*, 285 N.J.Super. 125, 135, 666 A.2d 599 (App.Div.1995). "The 'equitable purpose of prejudgment interest is to compensate a party for lost earnings on a sum of money to which it was entitled, but which has been retained by another.'" *North Bergen Rex Transport, Inc. v. Trailer Leasing Co., A Division of Keller Sys., Inc.*, 158 N.J. 561, 574–75, 730 A.2d 843 (1999)(quoting *Sulcov*, 303 N.J.Super. at 39, 696 A.2d 31); *see also* Sylvia B. Pressler, *Rules Governing The Courts of the State of New Jersey*, R. 4:42–11, cmt. 8 ("[P]rejudgment interest is not a penalty but rather its allowance simply recognizes that until the judgment is entered and paid, the defendant has had the use of money rightfully the plaintiff's").

 Under New Jersey Court Rule 4:42–11(b), a court may suspend prejudgment interest in a tort action for a period of time in "exceptional cases." *See* N.J. Ct. R. 4:42–11(b)(1999).[3] Recently, the Su-

---

**3.** Rule 4:42–11 provides, in relevant part:

Except where provided by statute with respect to a public entity or employee, and except as otherwise provided by law, the court shall, in tort actions, including prod-

ucts liability actions, include in the judgment simple interest, calculated as hereafter provided, from the date of the institution of the action or from a date 6 months after the date the cause of action arises, whichev-

preme Court of New Jersey explicitly extended the exceptional circumstance rule to contract cases. *See North Bergen Rex Transport, Inc.*, 158 N.J. at 575, 730 A.2d 843. Therefore, if a court deems prejudgment interest appropriate in a contract case, the court may suspend the running of the interest for a period of time in exceptional cases.

■ In *Espin v. Allergan Pharmaceutical, Inc.*, 127 N.J.Super. 496, 317 A.2d 779 (Law Div.1973), the Superior Court of New Jersey, Law Division, suspended the running of prejudgment interest where the court had placed the case on the "inactive list" because of the plaintiff's inability or unwillingness to proceed. *See id.* at 497–98, 317 A.2d 779. Subsequent cases, however, have rejected the idea that an " 'exceptional case' must be equated with fault on the part of a plaintiff," *Dall'Ava v. H.W. Porter Co.*, 199 N.J.Super. 127, 131, 488 A.2d 1036 (App.Div.1985), and have stated in dicta that the defendant's role in the delay is a factor to be considered, *see Coffman v. Keene Corp.*, 257 N.J.Super. 279, 295, 608 A.2d 416 (App.Div.1992)(describing Dall'Ava decision as based in part on the fact that "the defendant ... had no part in delaying the litigation"). That being said, New Jersey courts have found exceptional circumstances where delays in the litigation have resulted not from the conduct of either party but because of a judicial delay, *see North Bergen Rex Transport, Inc.*, 158 N.J. at 575, 730 A.2d 843 (finding that the thirteen-month period between the end of trial and the date the trial court rendered its decision was an "exceptional circumstance"), a court-ordered stay, *see Dall'Ava*, 199 N.J.Super. at 131, 488 A.2d 1036 (ordering a judicial stay because of bankruptcy proceedings involving co-defendant), and the fact that defendant was "judgment proof," *see Heim v. Wolpaw*, 271 N.J.Super. 538, 542–43, 638 A.2d 1373 (App.Div.1994).

er is later, provided that *in exceptional cases the court may suspend the running of such prejudgment interest.*

Contrary to the arguments set forth in the Defendants' brief, I find neither *Leonen v. Johns–Manvillle Corp., et al.*, CIV. No. 82–2684, 1988 WL 98528 (D.N.J. Sept.12, 1988) nor *Wilton v. Cycle Trucking, Inc.*, 240 N.J.Super. 326, 573 A.2d 462 (App.Div.1989) controlling or persuasive. First, in *Leonen*, an unpublished decision, the District Court precluded prejudgment interest for the months that the proceedings were stayed by the United States Court of Appeals for the Third Circuit. *See* 1988 WL 98528 at *2. Two months later, on a motion for reconsideration, the Court vacated its prejudgment interest decision based on the new evidence that the case had not in fact been stayed. *See Leonen v. Johns–Manville Corp.*, CIV. No. 82–2684, 1988 WL 125853, at *5–6 (D.N.J. Nov. 23, 1988). Second, in *Wilton*, 240 N.J.Super. at 326, 573 A.2d 462, the Superior Court of New Jersey, Appellate Division, suspended prejudgment interest pursuant to a New Jersey statute inapplicable to this case. *See id.* at 329, 573 A.2d 462.

New Jersey state courts have not found exceptional circumstances where the defendant's industry was financially troubled, *see Coffman*, 257 N.J.Super. at 295, 608 A.2d 416, the plaintiff had a reasonable basis for the various adjournments, *see Green v. General Motors Corp.*, 310 N.J.Super. 507, 535, 709 A.2d 205 (App. Div.1998), and where the delay between the return of the jury's verdict and the entry of final judgment was due to case-specific complexities, *see Adamson v. Chiovaro*, 308 N.J.Super. 70, 82, 705 A.2d 402 (App.Div.1998).

In this case, the parties "jointly reported that they wish[ed] to engage in a private alternative dispute resolution process, and that they wish[ed] for this litigation to be stayed." *See* Order for Administrative Termination at 1 (filed April 13, 1992); *see also* Carruthers Prejudgment Interest Aff., Ex. A. The parties agree that media-

N.J. Ct. R. 4:42–11(b)(1999)(emphasis added).

tion never took place. *See* Defs.' Prejudgment Interest Mem. at 3; Pl.'s Prejudgment Interest Mem. at 2. In granting the motion to reopen this case, I made no specific findings as to the Defendants' conduct regarding the failure to mediate, and only held that the Defendants did not demonstrate the factors necessary to dismiss the case for a failure to prosecute. *See* Order Reopening Case for Further Proceedings at 3 (filed June 6, 1997)(quoting *Poulis v. State Farm Fire and Cas. Co.*, 747 F.2d 863, 868 (3d Cir.1984)).[4]

Considering the sparseness of the record before me and the equitable underpinnings of the "exceptional circumstance" doctrine, I find that I am unable to make a reasoned decision concerning the suspension of prejudgment interest. In addition, considering the procedural posture of this case, I find that the instant motion is premature. *See e.g., Cooper Distributing Co., Inc. v. Amana Refrigeration, Inc.*, 180 F.3d 542, 553 (3d Cir.1999)(finding that appeal of District Court's denial of prejudgment interest was premature where new trial was ordered and therefore new finding on issue of prejudgment interest).[5] Accordingly, I shall deny the Defendants' motion for summary judgment without prejudice. Should the issue of prejudgment interest become an issue after the trial in this case, I shall hold an evidentiary hearing to determine whether this case

qualifies as "exceptional" under New Jersey law.

### C. The Defendants' Partial Summary Judgment Motion on Electric Mobility's Out–of–Pocket Expense Claim

The Defendants contend that there are no genuine issues of material fact and that they are entitled to judgment as a matter of law on all of Electric Mobility's out-of-pocket expenses incurred before January 20, 1989 and after May 1, 1990. *See* Mem. of Law of Bourns Senstors/Controls and Hall–Mark Electronics in Supp. of Their Mot. for Partial Summ. J. with respect to EMC's Out–of–Pocket Expense Claim ("Defs.' Expense Mem.") at 5–10. In opposition to the motion, Electric Mobility argues that genuine issues of material fact preclude partial summary judgment on both claims. *See* Pl.'s Mem. of Law in Supp. of its Response to Defs.' Mot. for Partial Summ. J. with respect to EMC's Claim for Out–of–Pocket Expenses ("Pl.'s Expense Mem.") at 5–9. For the reasons set forth below, I shall grant the Defendants' motion for partial summary judgment on Electric Mobility's out-of-pocket expenses incurred before January 20, 1989, but deny the Defendants' motion for partial summary judgment on the out-of-pocket expense claim for expenses incurred after May 1, 1990.

---

4. In my June 6, 1997 Order, I held the following:

> 9. In *Poulis*, the Court set forth the following factors to be examined by a court when deciding whether to dismiss an action as a sanction:
> (1) the extent of the party's personal responsibility; (2) the prejudice to the adversary; (3) a history of dilatoriness; (4) whether the conduct of the party or the attorney was willful or in bad faith; (5) the effectiveness of sanctions other than dismissal ...' and (6) the meritoriousness of the claim or defense.
> *Id.* at 868.
> 10. Other than the prejudice factor, Defendants have not demonstrated that any of the Poulis factors weigh in favor of dismissal in this case....

Order Reopening Case for Further Proceedings at 3 (filed June 6, 1997).

5. I wholly reject the Defendants' contention that *Cooper Distributing* is inapposite to this case because "the only issue in *Cooper* was whether the prejudgment interest amount could be *calculated* before trial." Defs.' Reply Mem. at 5 (emphasis in original). The issue before the *Cooper Distributing* court clearly was whether the District Court erred in denying prejudgment interest. *See Cooper Distributing*, 180 F.3d at 552. Considering that a new trial on lost profits was required and that the award of prejudgment interest "is a matter of equitable discretion based upon the parties' conduct [and] ... the parties' conduct is not yet complete," the Court held that "it would be premature to decide the issue now." *See id.* at 553.

In its First Amended Complaint, Electric Mobility alleges that "between January 20, 1989 and June 29, 1989, [Electric Mobility] ordered and received through Hall–Mark over 7,000 potentiometers manufactured by Bourns." First Amended Complaint at ¶ 8 (filed Sept. 17, 1990); Carruthers Out–of–Pocket Expense Aff., Ex. A. Based upon that allegation, the Defendants move for partial summary judgment on the ground that they cannot be liable for Electric Mobility's out-of-pocket expenses incurred prior to January 20, 1989. In support of their motion, the Defendants argue that the allegation in the First Amended Complaint rises to the level of a judicial admission. *See* Defs.' Out–of–Pocket Expense Reply at 2–3. Electric Mobility, on the other hand, contends that the existence of conflicting deposition testimony regarding the time frame of the dispute precludes summary judgment on its out-of-pocket expense claim. *See* Pl.'s Out-of-Pocket Expense Mem. at 8–9. In addition, Electric Mobility also contends that the pleadings have sufficiently put the Defendants on notice, as required by the Federal Rules of Civil Procedure. *See id.* at 9.

 " '[A] party's assertion of fact in a pleading is a judicial admission by which it is normally bound throughout the course of the proceeding.' " *Schott Motorcycle Supply Inc. v. American Honda Motor Co.,* 976 F.2d 58, 61 (1st Cir.1992)(quoting *Bellefonte Re Ins. Co. v. Argonaut Ins. Co.,* 757 F.2d 523, 528 (2d Cir.1985)); *see also Davis v. A.G. Edwards and Sons, Inc.,* 823 F.2d 105, 108 (5th Cir.1987). Like many other Courts of Appeal, the Third Circuit has held that "to be binding, judicial admissions must be unequivocal." *Glick v. White Motor Co.,* 458 F.2d 1287, 1291 (3d Cir.1972); *see also Greenwell v. Boatwright,* 184 F.3d 492, 498 (6th Cir.1999)(holding that only "deliberate, clear and unambiguous" statements are judicial admissions); *Schott Motorcycle Supply, Inc. v. American Honda Motor Co.,* 976 F.2d 58, 61 (1st Cir.1992)(affirming the District Court's finding of a judicial admission from a "clear[ ] and unambiguous[ ]"

allegation in the complaint); *In re Corland Corp.,* 967 F.2d 1069, 1074 (5th Cir.1992)(holding that only "deliberate, clear and unequivocal" statements can constitute conclusive judicial admissions). When a statement meets such a threshold, "even if the post-pleading evidence conflicts with the evidence in the pleadings, admissions in the pleadings are binding on the parties and may support summary judgment against the party making such admissions." *Missouri Housing Dev. Comm'n v. Brice,* 919 F.2d 1306, 1315 (8th Cir.1990).

 In *Davis v. A.G. Edwards and Sons, Inc.,* 823 F.2d 105 (5th Cir.1987), the plaintiffs conceded in their complaint, which alleged a violation of the Securities and Exchange Act of 1934, that they closed their securities trading account with the defendants "as a result of [the defendants'] excessive and objectionable trading practices." *See id.* at 107. Yet, in a subsequent affidavit, one of the plaintiffs recanted his allegation in the Complaint and stated that he was not aware of the defendants' unlawful activities until many months after he closed his trading account. *See id.* Invoking the doctrine of judicial admissions, the Court of Appeals for the Fifth Circuit affirmed the District Court's grant of summary judgment and held that "factual assertions in pleadings are … judicial admissions conclusively binding on the party that made them," and that the parties are "bound by the admissions in their pleadings, and thus no factual issue [could] be evoked by comparing their pleadings with [the plaintiff's] affidavit." *Id.* at 108.

Similarly, in *Schott Motorcycle Supply, Inc. v. American Honda Motor Co.,* 976 F.2d 58 (1st Cir.1992), the Court of Appeals for the First Circuit held that the District Court had not abused its discretion in applying the doctrine of judicial admissions to foreclose a contract claim based on purported oral promises. *See id.* at 62. In *Schott,* the plaintiff, a motorcycle franchisee, alleged that it had entered

into a sales agreement, which was a franchise dealership contract, with the defendant franchise dealer and that the plaintiff had, at all times, "complied with the terms and provisions of the franchise dealer contracts." *See id.* at 61. In support of its contention, the plaintiff attached as an exhibit the agreement to its complaint. *See id.* By virtue of the plaintiff's pleading and attached exhibit, the District Court held that the plaintiff judicially admitted that it was bound by the terms of the franchise agreement and rejected the plaintiff's argument that it had plead a termination and novation of the agreement. *See id.*

On appeal, the plaintiff argued that the District Court erred in holding that the plaintiff judicially admitted that "the only operative contract between the parties was the written franchise agreement," since the pluralization of the word "contracts" at various points throughout the complaint, as well as references to oral representations, should have put the defendant on notice that it was pleading termination and novation. In affirming the District Court's finding of a judicial admission, the First Circuit found that:

> No other agreement was mentioned nor was it suggested the [a]greement was nullified or altered, or when or how that occurred.... Here, the plaintiff clearly and unambiguously alleged in its original complaint and amended complaints that it was a party to the [franchise agreement]. Absent circumstances warranting relief from this judicial admission, the court felt that plaintiff should not be allowed to contradict its express factual assertion in an attempt to avoid summary judgment.... We have scoured the complaint and can find no indication that plaintiff was pleading a termination and novation of the Agreement. The mere pluralization of the word "contracts" at various points in the complaint was not enough to place the

defendant and the district court on notice of such a contention.

*Id.*

In this case, Electric Mobility pled that "between January 20, 1989 and June 29, 1989, [Electric Mobility] ordered and received through Hall–Mark over 7,000 potentiometers manufactured by Bourns." First Amended Complaint at ¶ 8; *see also* Carruthers Out–of–Pocket Expense Aff., Ex. A. This factual statement establishing the time period of Electric Mobility's claim is clear, unequivocal, and deliberate and therefore must be construed as a judicial admission. Although not argued by Electric Mobility, this Court is not willing to entertain a strained parsing of the language; the plain and ordinary interpretation of the statement is that, for purposes of its cause of action, Electric Mobility received its Bourns potentiometers from Hall–Mark between January 20 and June 29, 1989.

While it is true that a judicial admission normally binds the party making it throughout the course of the action, it is also well-established that trial judges are given broad discretion to relieve parties from the consequences of judicial admissions in appropriate cases. *See* 9 Wigmore on Evidence § 2590 (Chadbourn rev.1981); *see also MacDonald v. General Motors Corp.,* 110 F.3d 337, 340 (6th Cir.1997); *United States v. Belculfine,* 527 F.2d 941, 944 (1st Cir.1975); *Coral v. Gonse,* 330 F.2d 997, 998 n. 1 (4th Cir.1964)("If the District Court, convinced that an honest mistake had been made, the original allegation was untrue and that justice required relief, it may, in its discretion, relieve the party of its otherwise binding consequence."). Although the issue in this case is a close one, I conclude that to reject the judicial admission in these circumstances would be an abuse of discretion.

The difficulty presented in this case is that it is likely that the Defendants were on notice that Electric Mobility might have ordered and received Bourns potentiome-

ters from Hall–Mark before January 20, 1989. For most of this litigation, the Defendants have alleged that "[d]uring the period 1984 to 1989, [Electric Mobility] purchased from Hall–Mark tens of thousands of potentiometers manufactured by Bourns." Defendants' Statement Pursuant to Local Civil Rule 56.1 (on Prejudgment Interest Claim) at ¶ 4 (filed July 30, 1999); Defendants' Rule 56.1 Statement of Material Facts as to Which There is No Genuine Issue (Lost Profits Claim) at ¶ 4 (filed Sept. 21, 1998); Mem. of Law of Bourns Sensors/Controls, Inc[.] and Hall–Mark Electronics, Inc. in Support of Motion for Partial Summary Judgment (Lost Profits Claim) at 3 (filed Sept. 21, 1998). Unfortunately, Electric Mobility has failed to submit, and this Court has failed to find, one shred of evidence in the summary judgment record that proves that Electric Mobility ordered and received Bourns potentiometers before 1989. In an attempt to prove such a fact, Electric Mobility points to the rather feeble deposition testimony of Michael Flowers, the President of Electric Mobility, who testified that he believed that the time period in which Electric Mobility ordered and received Bourns potentiometers from Hall–Mark "was a broader period of time." *See* Kenneth M. Denti Out–of–Pocket Expense Aff., Ex. F (Flowers Dep.) at 715.

In sum, I conclude that this is not an "appropriate" case in which to exercise my discretion to excuse the consequences of Electric Mobility's judicial admission. *Cf. MacDonald,* 110 F.3d at 340 (finding that trial court was within discretion to conclude attorney's remarks were not "deliberate voluntary waivers" and did not constitute judicial admissions); *Belculfine,* 527 F.2d at 944 (holding that District Court did not abuse discretion in not binding government to casual statements made by its attorney); *United States v. Brewton,* Crim. No. 90–10566–C, 1991 WL 84477, at *8 (D.Mass. March 28, 1991)("In a real and legitimate controversy, a party should be left within the knot of his averments in pleadings and admissions in testimony, unless the Court can find an absolute demon-

stration from the evidence in the case, or facts within judicial notice, like the laws of physics, etc., that in no event could the averments and admissions be true." (quoting *Larson Jr. Co. v. Wm. Wrigley Jr. Co.,* 253 F. 914, 917 (7th Cir.1918))). Accordingly, I shall grant the Defendants' motion for partial summary judgment with respect to Electric Mobility's out-of-pocket expense claim for expenses incurred before January 20, 1989.

Next, the Defendants contend that as a matter of law, they are not liable for any expenses incurred by Electric Mobility after May 1, 1990, the date on which all of Electric Mobility's limited warranties allegedly expired, because such damages were not "reasonably foreseeable" to the Defendants. *See* Defs.' Out–of–Pocket Expense Mem. at 5. In opposition to the motion for partial summary judgment, Electric Mobility argues that a genuine issue of material fact exists since all of their limited warranties did not expire on May 1, 1990. *See* Pl.'s Out-of-Pocket Expense Mem. at 5. In the alternative, Electric Mobility contends that, as a matter of law, repairs outside of the warranty period are reasonably foreseeable. *See id.* Because the Defendants' own moving papers demonstrate that there is a genuine issue of material fact relating to the construction of Electric Mobility's Limited Warranty ("Limited Warranty"), partial summary judgment is not appropriate in this case.

A party moving for summary judgment bears the burden of proving that no genuine issue of material fact exists and that it is entitled to judgment as a matter of law. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586 n. 10, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). A dispute of fact is "genuine" within the meaning of Federal Rule of Civil Procedure 56(c) if the evidence is such that a reasonable jury could find for the nonmoving party, and the fact is "material" under the Rule only if it might affect the outcome of the suit under the applicable rule of law; "in other words disputes over irrelevant or unnecessary facts will not preclude a grant

of summary judgment." *Rastelli Bros., Inc. v. Netherlands Ins. Co.,* 68 F.Supp.2d 440, 444 (D.N.J.1999)(Simandle, J.). Only after the movant has carried this initial burden is the nonmoving party required to "come forward with 'specific facts showing that there is a genuine issue for trial.'" *Id.* at 587, 106 S.Ct. 1348 (quoting Fed. R.Civ.P. 56(e)). Where the movant's own papers demonstrate the existence of material factual issues, summary judgment must be denied, even if the opposing party fails to file contravening affidavits or other evidence. *See Drexel v. Union Prescription Centers, Inc.,* 582 F.2d 781, 790 (3d Cir.1978)(citing *Adickes v. S.H. Kress & Co.,* 398 U.S. 144, 159–61, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970)).

■ In their brief, the Defendants argue that Electric Mobility last installed one of the Defendants' faulty potentiometers into an electric scooter or wheelchair either no later than August 29, 1989 or no later than October 31, 1989. *See* Defs.' Out–of–Pocket Expense Mem. at 3 (citing Carruthers Out–of–Pocket Expense Aff., Ex. C (Michael Flowers Dep.) at 532). Relying upon the six-month Limited Warranty Electric Mobility provided to its customers, the Defendants contend that they therefore are not liable for any out-of-pocket expenses after May 1, 1990, or six months from the later date that the last of their potentiometers was allegedly installed by Electric Mobility. *See id.* at 3–5. Although the Defendants do not so explicitly argue, implicit in their argument is either the contention that the Limited Warranty runs from the date of Electric Mobility's installment of the potentiometers or that each of Electric Mobility's scooters and wheelchairs were purchased by customers on the same day the machines were manufactured.

However, the Limited Warranty, submitted by the Defendants in support of their brief, explicitly states that "Electric Mobility .... warrants [the equipment], for a period of six months, *from the date of delivery ....*" *See* Carruthers Out–of–Pocket Expense Aff., Ex. D ("Electric Mobility Limited Warranty")(emphasis added).[6] The plain language of the Limited Warranty thus implies that the date of the delivery of each Electric Mobility scooter and wheelchair, and not the date of the potentiometer installation, triggers the beginning of the warranty period.

Quite plainly, the Defendants' moving papers themselves demonstrate the existence of a genuine issue of material fact. The interpretation of the Limited Warranty is a material fact since it is relevant as one factor in determining which damages were reasonably foreseeable to the Defendants. *See e.g., Donovan v. Bachstadt,* 91 N.J. 434, 444, 453 A.2d 160 (1982)(holding that a defendant "is not chargeable for loss that he did not have reason to foresee as a probable result of the breach when the contract was made"). The Defendants' analysis conflicts with the plain language of the Limited Warranty. Therefore, because there is no support in the summary judgment record for the Defendants' argument, I conclude that the Defendants have failed to meet their initial burden of establishing the absence of a genuine issue of this material fact. Consequently, Electric Mobility is not required to come forward with specific facts showing that there is a genuine issue for trial.[7] Because there is a

---

**6.** The Limited Warranty provides, in relevant part:

Electric Mobility Corporation warrants, for a period of six months, *from the date of delivery* noted on the warranty registration card and confirmed with company record, the equipment delivered against defects in materials and workmanship under normal use and service when used and maintained in accordance with instructions supplied by Electric Mobility Corporation.

. . .

All liabilities of Electric Mobility Corporation shall terminate six months *from the date of initial delivery of the equipment ....* Carruthers Out–of–Pocket Expense Aff., Ex. D ("Electric Mobility Limited Warranty").

**7.** This Court intimates no view regarding the sufficiency of the "Engineering Change Notice Form," *see* Denti Aff., Ex. E, submitted by Electric Mobility to establish the existence of a material fact in this case.

genuine issue of material fact and the Defendants are not entitled to judgment as a matter of law, I shall deny the Defendants' motion for partial summary judgment on Electric Mobility's out-of-pocket expenses after May 1, 1990.

## IV. CONCLUSION

For the reasons set forth above, I shall deny Electric Mobility's motion pursuant to 28 U.S.C. § 1292(b) for certification of this Court's Orders of January 8, 1992 and October 30, 1998. With respect to Judge Bassler's January 8, 1992 Order, however, I shall order the parties to brief the question of whether the New Jersey Consumer Fraud Act issue should be reconsidered, as well as the propriety of vacating the partial summary judgment order. Moreover, I shall deny the Defendants' motions for partial summary judgment on the issues of prejudgment interest and grant in part and deny in part the motion concerning Electric Mobility's out-of-pocket expenses.