EDITH BROWN CLEMENT, Circuit Judge,
dissenting as to Parts III.A.2 & III.B.l.b:
I respectfully dissent from the majority’s dicta purporting to clearly establish a First Amendment right to film the police and from the majority’s reversal of the district court’s grant of qualified immunity to Officers Grinalds and Dyess regarding Turner’s unlawful arrest claim.
The Supreme Court has repeatedly held that “qualified immunity protects ‘all but the plainly incompetent or those who knowingly violate the law.’ ” See, e.g., Mullenix v. Luna, — U.S. -, 136 S.Ct. 305, 308, 193 L.Ed.2d 255 (2015) (quoting Malley v. Briggs, 475 U.S. 335, 341, 106 S.Ct. 1092, 89 L.Ed.2d 271 (1986)). The Supreme Court recently “reiterate[d] the longstanding principle that ‘clearly established law1 should not be defined ‘at a high *697 level of generality.’ ” White v. Pauly, — U.S. -, 137 S.Ct. 548, 552, 196 L.Ed.2d 468 (2017) (quoting Ashcroft v. al-Kidd, 563 U.S. 731, 742, 131 S.Ct. 2074, 179 L.Ed.2d 1149 (2011)). “[T]he clearly, established law must be ‘particularized’ to the facts of the case.” Id. (quoting Anderson v. Creighton, 483 U.S. 635, 640, 107 S.Ct. 3034, 97 L.Ed.2d 523 (1987)).
I
The majority asserts, unconnected to the particular facts and unnecessary to the disposition of this case, that “a First Amendment right to record the police does exist, subject only to reasonable time, place, and manner restrictions.” The majority derives this general right to film the police from “First Amendment principles, controlling authority, and persuasive precedent.” But the Supreme Court has repeatedly reversed attempts to define “clearly -established law” at such “a high level of generality.” White, 137 S.Ct. at 552.
A law is not clearly established unless and until there is “directly controlling authority” or “a consensus of cases of persuasive authority such that a reasonable officer could not have believed that his actions were lawful.” Gonzalez v. Huerta, 826 F.3d 854, 858 (5th Cir. 2016) (emphasis omitted). To the extent there is any consensus of persuasive authority, those cases focus only on the narrow issue of whether there is a First Amendment right to film the police “carrying out their duties in public.” E.g., Glik v. Cunniffe, 655 F.3d 78, 82 (1st Cir. 2011). Turner did not allege that he filmed police officers conducting their public duties, but rather that he filmed a police station.
The majority does not determine that the officers here violated Turner’s First Amendment rights — perhaps because it would be reasonable for security reasons to restrict individuals from filming police officers entering and leaving a police station. Because the majority does not hold that the officers actually violated the First Amendment, “an officer acting under similar circumstances” in the future will not have violated any clearly established law. See White, 137 S.Ct. at 552.
II
The majority reverses the district court’s grant of qualified immunity to Officers Grinalds and Dyess regarding Turner’s unlawful arrest claim, holding that “it was clearly established that an officer could not prolong an investigative detention without an investigatory purpose.” But the majority “fail[s] to identify a case where an officer acting under similar circumstances as [Officers Grinalds and Dyess] was held to have violated the Fourth Amendment.” White, 137 S.Ct. at 552. Turner alleged only that he was in the police car “a while” — he failed to specify the length of the investigative detention. Perhaps more importantly, Turner clearly alleged that he “asked for a supervisor to come to the scene.” Neither Turner nor the majority identify any case clearly establishing that an officer violated the Fourth Amendment when he extended an investigative detention because the detained individual “asked for a supervisor to come to the scene.”
Because Turner himself requested a supervisor, a reasonable police officer in that situation could believe that waiting for the supervisor to arrive at the scene did not transform Turner’s detention into a de fac-to arrest. At the very least, Officers Gri-nalds and Dyess did not act objectively unreasonably in waiting for the requested supervisor — especially because Lieutenant Driver had to come from the Fort Worth Police Station across the street. Accordingly, I respectfully dissent from the majori *698 ty’s reversal of the district court’s grant of qualified immunity to Officers Grinalds and Dyess on Turner’s unlawful arrest claim.